**FEE PAID**

```
        FILED
CLERK, U.S. DISTRICT COURT

        5/23/24

CENTRAL DISTRICT OF CALIFORNIA
BY:     eee      DEPUTY
```

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel*. [UNDER SEAL], <br><br>  Plaintiff, <br> v. <br><br> [UNDER SEAL], <br><br>  Defendants. | Case No. **2:24-CV-04274-SB-ASx** <br><br> Hon. _____ <br><br> **QUI TAM COMPLAINT** <br><br> **FILED UNDER SEAL UNDER 31 U.S.C. § 3730(b)(2)** <br><br> **JURY TRIAL DEMANDED** |

**TO BE FILED UNDER SEAL**

**PURSUANT TO 31 U.S.C. § 3730(b)(2)**

SHN\794342.1

Heidi Rummel, Esq.
CA Bar No. 183331
699 Exposition Blvd
Los Angeles, CA 90089
Telephone: (213) 740-2865
Facsimile: (213) 740-5502
hrummel@law.usc.edu

Eric H, Jaso (*pro hac vice* admission pending)
Spiro Harrison & Nelson
363 Bloomfield Avenue, Suite 2C
Montclair, NJ 07042
Telephone: (973) 232-0881
Facsimile: (973) 232-0887
ejaso@shnlegal.com

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. AIDAN FORSYTH, <br><br> Plaintiff-Relator, <br><br> v. <br><br> SPAGHETTI WAREHOUSE RESTAURANTS INC., SPAGHETTI WAREHOUSE OF OHIO INC., and WAREHOUSE 72 INC., <br><br> Defendants. | **Civil Action No.** _____ <br><br> **Hon.** _____ <br><br> **QUI TAM COMPLAINT** <br><br> **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** <br><br> **JURY TRIAL DEMANDED** |

On behalf of the United States of America (the "United States" or the "Government"), Plaintiff and Relator Aidan Forsyth ("Relator") files this *qui tam* action against Defendants Spaghetti Warehouse Restaurants Inc. ("SW"), Spaghetti Warehouse of Ohio Inc. ("SWO"), and Warehouse 72 Inc. ("W72") (collectively, "Defendants"), and alleges as follows:

- 1 -

US ex rel. Forsyth v. Spaghetti Warehouse Restaurants Inc. Qui Tam Complaint (UNDER SEAL)

SHN\794342.1

## INTRODUCTION

1. This is an action to recover treble damages, civil penalties and all other remedies on behalf of the United States of America in connection with the Defendant's materially false and fraudulent application to the Government for a Small Business Administration ("SBA") Restaurant Revitalization Fund ("RRF") grant in violation of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA").

2. Pursuant to the FCA, Relator seeks to recover, on behalf of the United States of America, damages and civil penalties arising from false or fraudulent claims for payment that Defendant submitted or caused to be submitted to the Federal Government-funded RRF grant program.

## SUMMARY OF ALLEGATIONS

3. At all times relevant to this action, SW, SWO, and W72 collectively owned and operated over 127 affiliated restaurant locations.

4. Despite this, in or before May 2021, each of the Defendants applied for an RRF grant.

5. In the application, Defendants falsely stated and certified that SW, SWO and W72 were eligible entities which did not own or operate more than 20 restaurant locations. Defendants also expressly acknowledged that submitting a materially false application would violate federal law.

6. In reliance on these false statements and certifications, the SBA issued RRF grants to Defendants of approximately $6.4 million.

7. Had Defendants been truthful in their statements and certifications to the SBA, the grants would never have been issued, because the business owned and/or operated significantly more restaurant locations than was permissible under the law.

8. Relator files this *qui tam* lawsuit to enable the Government to recover from Defendant the SBA issued monies that were provided to Defendant as the result of its wrongdoing, as well as to recover treble damages and/or penalties.

- 2 -
US ex rel. Forsyth v. Spaghetti Warehouse Restaurants Inc. Qui Tam Complaint (UNDER SEAL)

SHN\794342.1

**JURISDICTION, VENUE, AND SPECIAL REQUIREMENTS**

9. This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, under 31 U.S.C. § 3729 of the False Claims Act, and under 28 U.S.C. § 1345, which provides the United States District Courts with original jurisdiction over all civil actions commenced by the United States of America.

10. In addition, the FCA specifically confers jurisdiction upon the United States District Courts under 31 U.S.C. § 3732. This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because multiple of the Defendants have principal places of business in this District.

11. Venue is proper in this District under 31 U.S.C. § 3732(a) because certain of the acts complained of herein occurred in this District.

12. In accordance with 31 U.S.C. § 3730(b)(2), this Complaint has been filed *in camera* and will remain under seal for a period of at least 60 days, and shall not be served on the Defendants until the Court so orders.

13. Pursuant to 31 U.S.C. § 3730(b)(2), the Relator must provide the Government with a copy of the Complaint and a written disclosure of substantially all material evidence and material information in his possession contemporaneous with the filing of the Complaint. Relator has complied with this provision by contemporaneously serving copies of the Complaint and such disclosure upon the Honorable E. Martin Estrada, United States Attorney for the Central District of California, and upon the Honorable Merrick B. Garland, Attorney General of the United States.

14. Relator is not aware that the allegations in this Complaint have been publicly disclosed. In any event, this Court has jurisdiction under 31 U.S.C. § 3730(e)(4) because the Relator is an "original source" since he has voluntarily provided his information to Government before filing this Complaint, and has knowledge which is both direct and independent of, and materially adds to, any public disclosures to the extent they may exist.

**PARTIES & RELATED ENTITIES**

15. Plaintiff/Relator Aidan Forsyth resides at 55 West 8th Street, New York, NY 10011.

16. Defendant Spaghetti Warehouse Restaurants Inc. was incorporated in the State of Texas on or about June 1, 1972. Its mailing address was 949 S Coast Dr. Ste 450 Costa Mesa, CA. 92626-7707. The address of SW's registered agent was 838 Walker Road Suite 21-2 Dover, DE 19904. SW operated as a 7-unit restaurant chain and is 100% owned by a California entity named "Frandeli LLC."[1]

17. Defendant Spaghetti Warehouse of Ohio, Inc. was incorporated in the State of Delaware on or about June 7, 2019. The address of SWO's registered agent was 838 Walker Road Suite 21-2 Dover, DE 19904. Doug Pak served as the CEO of SWO.

18. Defendant Warehouse 72, Inc. was incorporated in the State of Delaware on or about July 26, 2018. The address of W72's registered agent was 838 Walker Road Suite 21-2 Dover, DE 19904. Doug Pak was the President and Director of W72.

19. BLD Brands, LLC was incorporated in the State of California on or about December 4, 2014. Its principal address was located at 949 South Coast Drive Suite 450 Costa Mesa, CA 92626. BLD was a restaurant business that had two restaurant divisions: Serazen LLC and Spaghetti Warehouse Restaurants, Inc. Doug Pak was the sole manager and CEO of BLD.

20. Serazen LLC was incorporated in the State of Delaware on or about November 15, 2010. The address of Serazen's registered agent was 838 Walker Road Suite 21-2 Dover, DE 19904. Serazen was a multi-unit franchise operator of over 70 Papa John's locations and over 50 Hardee's locations. Serazen operated franchises under the entities Papa John's Ohio LLC, PJ Ohio LLC, Serazen LLC, BLD Brands LLC, PJ Las Vegas LLC, PJ North Carolina LLC.

21. Frandeli Group LLC was incorporated in the State of California on or about October 3, 2005. FG's principal address was located at 20377 SW Acacia St., 2nd Floor Newport Beach, CA 92660. Doug Pak was the Manager of FG.

---

[1] No California LLC has been incorporated under the name Frandeli LLC. However, non-defendant Frandeli Group LLC is incorporated in California.

- 4 -

US ex rel. Forsyth v. Spaghetti Warehouse Restaurants Inc. Qui Tam Complaint (UNDER SEAL)

SHN\794342.1

## GOVERNING LAWS, REGULATIONS, AND CODES OF CONDUCT

### The False Claims Act

22. Originally enacted in 1863, the FCA was substantially amended in 1986 by the False Claims Amendments Act. The 1986 amendments enhanced the Government's ability to recover losses sustained as a result of fraud against the United States. Further clarifying amendments were adopted in May 2009 and March 2010.

23. The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval"; or "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim"; or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(A), (B), (G). Any person found to have violated these provisions or conspired to have violated these provisions is liable for a civil penalty of at least $13,946.00 and up to $27,894.00 per claim plus three times the amount of the damages sustained by the Government, as provided by 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see also* 88 FR 5776, Feb. 12, 2024).

24. The FCA defines the terms "knowing" and "knowingly" to mean that a person (1) "has actual knowledge of the information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or acts "in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). The statute provides that "no proof of specific intent to defraud" is required. 31 U.S.C. § 3729(b)(1)(B).

25. The FCA also broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or

- 5 -

US ex rel. Forsyth v. Spaghetti Warehouse Restaurants Inc. Qui Tam Complaint (UNDER SEAL)

SHN\794342.1

interest, and if the United States Government – (i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

26. The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery. The complaint must be filed under seal without service on any Defendant. The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

27. In this action, and under well-established precedent, the false and fraudulent nature of Defendants' conduct is informed or measured by their violation of, or failure to comply with, certain statutes and regulations material to the submission of applications for government-subsidized and/or issued small business loans.

**The American Rescue Plan Act Establishes the Restaurant Revitalization Fund**

28. The American Rescue Plan Act (the "ARPA") established the Restaurant Revitalization Fund ("RRF"), which gave the federal Small Business Administration ("SBA") the authority to provide funding to help restaurants that suffered financial loss due to the COVID-19 pandemic.

29. The RRF became effective on or about April 28, 2021, and was designed to provide restaurants with funding equal to their losses that resulted from the pandemic up to $10 million per business, with no more than $5 million per physical location.

30. Recipients of funding pursuant to the RRF were not required to repay money received as long as funds were put towards eligible uses on or before March 11, 2023. Eligible uses included payment of business expenses including, but not limited to, payroll costs, payments on mortgage obligation, rent payments, debt service, utility payments, maintenance expenses, construction of outdoor seating, business supplies, food and beverage expenses, covered supplier costs, and operating expenses.

31. Entities that were eligible to apply for an RRF loan were entities that had experienced pandemic-related revenue loss including restaurants, food stands, food trucks, food carts, caterers, bars, saloons, lounges, taverns, snack and non-alcoholic beverage bars, bakeries, brewpubs, tasting rooms, breweries, wineries, distilleries, inns, and other licensed facilities of a beverage alcohol producer where the public could taste, sample or purchase products.

32. To obtain an RRF loan, a qualifying business was required to complete the SBA Form 3172 application. The RRF loan application (SBA Form 3172) required the business (through its authorized representative) to acknowledge the RRF program rules and make certain affirmative certifications to be eligible to obtain the RRF loan.

33. The applicant's authorized representative was required to provide business tax information including gross receipts reported on the applicant's tax returns and the total amount of PPP loans and other pandemic-related government loans, if any, received by the applicant for the purpose of calculating the applicant's funding amount.

34. Question 1(b) of the application required the authorized representative to certify that as of March 13, 2020, the applicant did not "own[ ] or operate[ ] (together with any affiliated business) more than 20 locations, regardless of whether those locations do business under the same or multiple names" and stated that "if Yes, the Applicant is not eligible."

35. The application further required the applicant's representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and that "knowingly making a false statement to obtain a grant from SBA is punishable under the law," including by imprisonment.

36. Once submitted, the SBA reviewed applications from priority application groups first. Priority groups referred to small businesses with at least 51% ownership by one or more individuals who were women, veterans, or socially and economically disadvantaged. The SBA was directed by Congress to review RRF applications submitted by priority groups in Days 1 through 21 of the RRF loan effective date and all other applicants from Day 22 through the exhaustion of the funds.

37. Following a successful application submission, all applications entered "IRS verification" status. This process took up to seven days and allowed the SBA to validate the application submission.

### SPECIFIC FRAUD ALLEGATIONS

### SW, SWO and W72 were Affiliated Entities that Owned and

### Operated at Least 127 Restaurant Locations

38. SW owned and operated at least 7 restaurant locations, including SWO and W72.

39. Doug Pak was the CEO of SWO and the President and Director of W72. Moreover, upon in formation and belief, SW was 100% owned and operated by FG, which Doug Pak was the Manager of. Doug Pak was also the sole manager and CEO of BLD.

40. SW was affiliated with Serazen, as Serazen and SW made up the two restaurant divisions of BLD.

41. Further, SWO, W72, and Serazen all had the same listed registered agent address of 838 Walker Road Suite 21-2 Dover, DE 19904.

42. Serazen owned and operated at least 70 Papa John's locations and at least another 50 Hardee's locations.

### SW Applies for and Receives a

### RRF Grant

43. In or before May 2021, an authorized representative of SW prepared or caused to be prepared an SBA application for a RRF Grant (using SBA Form 3172, effective April 19, 2021) on behalf of SW.

44. Question 1(b) of the Application required the authorized representative to certify that as of March 13, 2020, the applicant did not "own[ ] or operate[ ] (together with any affiliated business) more than 20 locations, regardless of whether those locations do business under the same or multiple names" and expressly stated that "if Yes, the Applicant is not eligible."

45. The application required the applicant's representative to "certify that the information provided in this application and the information provided in all supporting documents

- 8 -

US ex rel. Forsyth v. Spaghetti Warehouse Restaurants Inc. Qui Tam Complaint (UNDER SEAL)

SHN\794342.1

and forms is true and accurate in all material respects" and that "knowingly making a false statement to obtain a grant from SBA is punishable under the law," including by imprisonment.

46.  Upon information and belief, an authorized representative of SW executed an RRF grant application on behalf of SW.

47.  Upon information and belief, despite having well over 20 affiliated restaurant locations, an authorized representative of SW falsely answered or caused to be answered "No" to Question 1(b) in the loan application.

48.  Upon information and belief, an authorized representative of SW falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

49.  In or before May 2021, an authorized representative submitted or caused to be submitted SW's RRF grant application to the SBA.

50.  On or about May 21, 2021, in reliance on SW's materially false and fraudulent representations and certifications in the loan application, the SBA issued Grant #5220539008 to SW in the amount of $3,013,757.00.

**SWO Applies for and Receives a**

**RRF Grant**

51.  In or before May 2021, an authorized representative of SWO prepared or caused to be prepared an SBA application for a RRF Grant (using SBA Form 3172, effective April 19, 2021) on behalf of SWO.

52.  Question 1(b) of the Application required the authorized representative to certify that as of March 13, 2020, the applicant did not "own[ ] or operate[ ] (together with any affiliated business) more than 20 locations, regardless of whether those locations do business under the same or multiple names" and expressly stated that "if Yes, the Applicant is not eligible."

53.  The application required the applicant's representative to "certify that the information provided in this application and the information provided in all supporting documents

and forms is true and accurate in all material respects" and that "knowingly making a false statement to obtain a grant from SBA is punishable under the law," including by imprisonment.

54. Upon information and belief, despite having well over 20 affiliated restaurant locations, an authorized representative of SWO executed an RRF grant application on behalf of SWO.

55. Upon information and belief, an authorized representative of SWO falsely answered or caused to be answered "No" to Question 1(b) in the loan application.

56. Upon information and belief, an authorized representative of SWO falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

57. In or before May 2021, an authorized representative submitted or caused to be submitted SWO's RRF grant application to the SBA.

58. On or about May 19, 2021, in reliance on SWO's materially false and fraudulent representations and certifications in the loan application, the SBA issued Grant #3720179004 to SWO in the amount of $2,073,069.29.

### W72 Applies for and Receives a RRF Grant

59. In or before May 2021, an authorized representative of W72 prepared or caused to be prepared an SBA application for a RRF Grant (using SBA Form 3172, effective April 19, 2021) on behalf of W72.

60. Question 1(b) of the Application required the authorized representative to certify that as of March 13, 2020, the applicant did not "own[ ] or operate[ ] (together with any affiliated business) more than 20 locations, regardless of whether those locations do business under the same or multiple names" and expressly stated that "if Yes, the Applicant is not eligible."

61. The application required the applicant's representative to "certify that the information provided in this application and the information provided in all supporting documents

and forms is true and accurate in all material respects" and that "knowingly making a false statement to obtain a grant from SBA is punishable under the law," including by imprisonment.

62. Upon information and belief, despite having well over 20 affiliated restaurant locations, an authorized representative of W72 executed an RRF grant application on behalf of W72.

63. Upon information and belief, an authorized representative of W72 falsely answered or caused to be answered "No" to Question 1(b) in the loan application.

64. Upon information and belief, an authorized representative of W72 falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

65. In or before May 2021, an authorized representative submitted or caused to be submitted W72's RRF grant application to the SBA.

66. On or about May 21, 2021, in reliance on W72's materially false and fraudulent representations and certifications in the loan application, the SBA issued Grant #5244769001 to W72 in the amount of $1,266,745.80.

**THE GOVERNMENT HAS BEEN DAMAGED AS A RESULT OF DEFENDANTS' CONDUCT**

67. Defendants' materially false statements have caused the federal government to be defrauded of taxpayer funds in the approximate amount of $6,353,572.09.

**CLAIMS FOR RELIEF**

**COUNT I**

False Claims Act:

Presenting or Causing to be Presented False and Fraudulent Claims

U.S.C. § 3729(a)(1)(A)

68. Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

69. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly presented, and caused to be presented, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

## COUNT II

False Claims Act:

Making or Using False

Records or Statement to Cause Claims to be Paid

31 U.S.C. § 3729(a)(1)(B)

70. Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

71. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly made, used, or caused to be made or used, false records or statements – *i.e.*, the false representations made or caused to be made by Defendants – material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B).

## COUNT III

False Claims Act: Conspiracy

31 U.S.C. § 3729(a)(1)(C)

72. Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

73. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants conspired with and among each other, and with others, to make or present false or fraudulent claims, and performed one or more overt acts to effect the submission and cause the payment of false or fraudulent claims.

- 12 -

US ex rel. Forsyth v. Spaghetti Warehouse Restaurants Inc. Qui Tam Complaint (UNDER SEAL)

SHN\794342.1

## DEMANDS FOR RELIEF

**WHEREFORE**, Relator, on behalf of the United States Government, demands judgment against the Defendants, ordering that:

A. That Defendants be ordered to cease and desist from submitting any more false claims, or further violating 31 U.S.C. § 3729, *et seq.*;

B. That judgment be entered in Relator's favor and against Defendants in the amount of each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. § 3729(a), plus a civil penalty of not less than $13,946.00 and up to $27,894.00 per claim as provided by 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see* 88 FR 5776, Feb. 12, 2024), to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

C. That Defendants be ordered to disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

D. That judgment be granted for Relator against Defendants for all costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Relator in the prosecution of this suit; and

E. That Relator be granted such other and further relief as the Court deems just and proper.

**THIS SPACE INTENTIONALLY LEFT BLANK**

**TRIAL BY JURY**

Relator hereby demands a trial by jury as to all issues.

DATE:   May 21, 2024                         Respectfully submitted,


By: ___/s/ Heidi Rummel_____
Heidi Rummel, Esq.
CA Bar No. 183331
699 Exposition Blvd.
Los Angeles, CA 90089
Telephone: (213) 740-2865
Facsimile: (213) 740-5502
hrummel@law.usc.edu

Eric H. Jaso (*pro hac vice* admission pending)
**SPIRO HARRISON & NELSON**
363 Bloomfield Avenue, Suite 2C
Montclair, NJ 07042
Telephone: (973) 232-0881
Facsimile: (973) 232-0887
ejaso@shnlegal.com

*Attorneys for Relator*

- 14 -
US ex rel. Forsyth v. Spaghetti Warehouse Restaurants Inc. Qui Tam Complaint (UNDER SEAL)

SHN\794342.1